UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| APRIL M. CHERRY, | CASE NO. 12-cv-05243-JRC |
| Plaintiff, | |
| | ORDER ON PLAINTIFF'S COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate the medical evidence properly. The ALJ gave great weight to the opinion from

an examining doctor, Dr. Meharg, yet failed to account appropriately for Dr. Meharg's opinion that plaintiff's cognitive processing speed was very slow. Similarly, the ALJ gave great weight to the opinion of state agency medical consultants, Dr. Arthur Lewy, Ph.D. and Dr. Bruce Eather, Ph.D., yet failed to account for their similar finding that plaintiff had limitations with processing speed.

In addition, although the ALJ relied heavily on previous work by plaintiff as a housekeeper in order to support his rejection of opinions from examining doctors, Drs. Schneider and Quinci, and to support his rejection of plaintiff's testimony and allegations, this previous work entailed working with a partner, which the vocational expert testified no longer is customary in the housekeeper position, and the record suggests that plaintiff's previous work was in a supportive environment as opposed to being in a competitive one.

For these reasons and based on the relevant record, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

<u>BACKGROUND</u>

Plaintiff, APRIL M. CHERRY, was born in 1979 and was twenty-six years old on her alleged date of disability onset of August 1, 2006 (*see* Tr. 17, 29). Plaintiff has the severe impairments of asthma, borderline intellectual functioning and anxiety disorder (*see* Tr. 19). She has past relevant work experience as a housekeeper (*see* Tr. 25).

Plaintiff indicated to an examining Licensed Psychologist/Neuropsychologist, Dr. Stephen S. Meharg, Ph.D. ("Dr. Meharg"), that she was able to be more alert when she took her Ritalin regularly, and that she helped "to watch the children of her sister-in-law who come over to their apartment on occasion" (*see* Tr. 303). Plaintiff reported to her counselor that she "had been watching her husband's niece and working towards consistency and learning that she can't have fights with her husband in front of her as the niece got too upset" (*see* Tr. 409). Plaintiff also indicated that she was "going to continue practice setting limits with the young niece" (*id.*).

Plaintiff indicated to her counselor on June 27, 2009 that she was going to school to get a degree, although she was not sure yet what subject she wanted to study (*see* Tr. 392). Subsequently, plaintiff indicated to her counselor that she was excited about the classes she had completed (*see* Tr. 391). However, plaintiff indicated that she was not sure if she was going to take classes again in the summer or the fall, due to her potential pregnancy (*id.*). Plaintiff's activities of daily living include spending two to three hours playing computer games, such as solitaire and other internet games (*see id.*). Her social anxiety allegedly prevents her from many social activities, including attending church with her husband.

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") on June 16, 2008 and July 29, 2010 respectively (*see* Tr. 17). Her applications were denied initially and following reconsideration (Tr. 32-

35, 37-38). Plaintiff's requested hearing on her SSI application was held before

Administrative Law Judge Dan R. Hyatt ("the ALJ") on June 10, 2010; and rescheduled

for September 10, 2010, so that plaintiff could file her application for DIB and the

hearing could be held regarding both applications simultaneously (Tr. 17, 622-28, 629-

50). On September 24, 2010, the ALJ issued a written decision in which he concluded

that plaintiff was not disabled pursuant to the Social Security Act (Tr. 14-27).

On January 27, 2012, the Appeals Council denied plaintiff's request for review,

making the written decision by the ALJ the final agency decision subject to judicial

review (Tr. 5-9). *See* 20 C.F.R. § 404.981. On March 13, 2102, plaintiff filed a complaint

in this Court seeking judicial review of the ALJ's written decision (*see* ECF No. 1).

Defendant filed the sealed administrative record regarding this matter ("Tr.") on May 24,

2012 (*see* ECF Nos. 9, 11). In her Opening Brief, plaintiff contends that the ALJ: (1)

failed to evaluate properly the medical evidence offered by Dr. Robert E. Schneider,

Ph.D. and Dr. Charles Quinci, Ph.D. (*see* ECF No. 13, pp. 4-18); (2) failed to evaluate

properly the lay evidence (*see id.*, pp. 18-19); and (3) failed to evaluate properly

plaintiff's credibility and testimony (*see id.*, pp. 19-21).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently

1    whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

2    supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

3    2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

4    2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

5            According to the Ninth Circuit, "[l]ong-standing principles of administrative law

6    require us to review the ALJ's decision based on the reasoning and actual findings

7    offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

8    adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

9    (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation

10   omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570

11   at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

12   2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

13   invoke in making its decision") (citations omitted). In the context of social security

14   appeals, legal errors committed by the ALJ may be considered harmless when the error is

15   irrelevant to the ultimate disability conclusion when considering the record as a whole.

16   *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

17   *46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout,

18   supra*, 454 F.3d at 1054-55.

19           //

20           //

21           //

22           //

<u>DISCUSSION</u>

1. **The ALJ failed to evaluate properly the medical evidence offered by Dr. Robert E. Schneider, Ph.D. ("Dr. Schneider") and Dr. Charles Quinci, Ph.D. ("Dr. Quinci").**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes, supra*, 881 F.2d at 751).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

1    Here, the ALJ rejected opinions from examining doctors, Drs. Schneider and

2    Quinci, giving their opinions "limited weight" (*see* Tr. 23-24). Instead, the ALJ gave

3    "great weight" to the opinions of examining doctor, Dr. Stephen Meharg, Ph.D. ("Dr.

4    Meharg"), indicating that his "assessment of the claimant's limitations is consistent with

5    the objective evidence of record" (*see id.*). There are multiple problems with upholding

6    the ALJ's written decision on this basis.

7        One important problem is that Dr. Meharg's opinion does not contradict the

8    opinions of either Drs. Schneider or Quinci on the issue of plaintiff's limitations with

9    respect to pace and speed of cognitive processing. As discussed further below in the

10   context of plaintiff's RFC, Dr. Meharg opined that plaintiff's "cognitive processing speed

11   is indeed very slow" (*see* Tr. 306). Therefore, even though the ALJ gave great weight to

12   the opinions of Dr. Meharg, this fact does not support the ALJ's rejection of the opinions

13   of Drs. Schneider and Quinci regarding plaintiff's limitations with respect to pace, as Dr.

14   Mehar's opinion supports the pace limitations opined by Drs. Schneider and Quinci.

15       As indicated, the ALJ gave great weight to the opinions of Dr. Meharg (*see* Tr. 23-

16   24). Although it is true that Dr. Meharg opined that plaintiff's "troublesome" high degree

17   of social self-consciousness was not seen necessarily as disabling in and of itself, when

18   he opined that plaintiff may have been able to perform her previous work as a

19   housekeeper, Dr. Meharg indicated that this opinion was "assuming that the environment

20   with her coworkers and supervisors can remain collegial and supportive" (Tr. 306). An

21   individual who can sustain work in a supportive work environment cannot necessarily

22   sustain such work in a competitive environment. There is now new evidence in the

record, which was not reviewed by the ALJ, but which is part of the administrative record, that plaintiff's ability to perform her previous work was dependent on her supportive work environment, as discussed more fully below.

The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit does not require a finding that plaintiff had good cause for failing to produce the new evidence earlier. *See Ramirez, supra*, 8 F.3d at 1451-54; *see also Taylor, supra*, 659 F.3d at 1232. Recently, the Ninth Circuit held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (emphasis added); s*ee also Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (*citing* 42 U.S.C. § 405(g) (sentence six); *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991); *cf. Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

On August 31, 2010, Dr. Schneider evaluated plaintiff for at least the fourth time and performed his fourth complete mental status examination (*see* Tr. 617-19). Similar to his opinions of January, 2007; January, 2008; and August, 2009, again in August, 2010 he opined that plaintiff would have difficulty performing tasks at a competitive pace (*see*

Tr. 619; *see also* Tr. 195-201 (plaintiff is "slow to understand simple and detailed instructions, slow to perform tasks and slow to understand the expectation of a job"); Tr. 434-44 (plaintiff "would have difficulty with anything more than the most basic single instruction, will need very active supervision and a highly repetitive job"); Tr. 446-53 ("she is very slow and can be expected to always be behind")). He indicated his impressions at that time as follows:

> Presentation and functioning continue to indicate that [plaintiff] is extremely fragile. She would not be able to deal with the typical stresses, demands and supervision of competitive employment. She worked with a partner at Ft. Lewis and would not be capable of working independently. She needs someone to provide ongoing direction, pacing and support. It is not clear she could actually perform competitive work. She may require some type of supported employment.

(Tr. 618).

The ALJ relied heavily on the fact that plaintiff had performed previous work as a housekeeper, yet new evidence indicates that this previous work was performed with a partner, who provided direction, pacing and support (*see id.*). This new evidence aids in demonstrating that the ALJ's decision was not supported by substantial evidence in the record as a whole. *See Brewes*, *supra*, 682 F.3d at 1159-60.

Regarding the review of the medical evidence before the ALJ, the ALJ included the following discussion in his written decision:

> Robert Schneider, Ph.D. conducted another psychological evaluation of the claimant in August of 2009 (internal citation to Exhibit 18F). . . . . He noted that she was more interactive and her energy was considerably better but she was still very slow and had limitations in her intellect, limited ability to understand instructions, lack of initiative, and childlike presentation and adjustment in which she needed someone to continually tell her what to do. (Internal citation to Exhibit 18F/4). Dr. Schneider

diagnosed claimant with social anxiety; depression, nos; hypersomnolence, currently managed; and borderline intellectual capacity. (Internal citation to Exhibit 18F/8). He opined that the claimant was slow to understand simple instructions, would have difficulty with anything more than basic single instruction, and would need very active supervision and a highly repetitive job. (Internal citation to Exhibit 18F/5). He assessed the claimant with a Global Assessment Functioning score of 46 indicating serious symptoms or impairment in social occupational or school functioning. (Internal citation to Exhibit 18F/5). Limited weight is again given to Dr. Schneider's opinion of the severity of claimant's mental limitations. The claimant' cognitive difficulties are a lifelong impairment that did not prevent her from working successfully in the past. The fact that these impairments did not prevent her from working at that item strongly suggests that they would not currently prevent work.

(Tr. 24).

The ALJ did not limit plaintiff's residual functional capacity to account fully for Dr. Schneider's opinion and did not include any limitations based on a need for direction, or a need for a supportive work environment, and the ALJ similarly did not include any limitation on plaintiff's ability to work at a competitive pace (*see* Tr. 21). Based on a review of the relevant record, including the multiple evaluations of Dr. Schneider, the ALJ's written decision, and the new evidence, the Court concludes that the ALJ did not provide specific and legitimate reasons based on substantial evidence in the record as a whole to reject Dr. Schneider's specific opinions regarding plaintiff's functional limitations on her ability to work. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043).

The Court also concludes that the quoted passage demonstrates the ALJ's improper over-reliance on plaintiff's past relevant work as a housekeeper in order to reject Dr. Schneider's opinions, Dr. Quinci's opinions, *see infra*, and plaintiff's testimony

1   and allegations, *see infra*, section 2. The evidence presented suggests that her previous

2   work as a housekeeper was performed with a partner, who provided direction, pacing and

3   support (Tr. 618)

4       Similarly, the ALJ gave limited weight to the opinions of Dr. Quinci, who

5   examined and evaluated plaintiff twice, in July, 2007 and September, 2008 (*see* Tr. 202-

6   10, 291-99), and who provided numerous opinions regarding specific functional

7   limitations on plaintiff's ability to work. Again, the ALJ gave his opinions limited

8   weight, in part, due to plaintiff's work history as a housekeeper (*see* Tr. 23). Again,

9   because new evidence indicates that this previous work was done with a partner who

10  provided pacing assistance and direction, plaintiff's ability to perform this work is not a

11  legitimate reason to fail to credit examining doctors' opinions regarding plaintiff's

12  limitations on functioning in a work environment, and does not demonstrate that she was

13  capable of competitive work, *see supra*.

14

15      The Court also notes that the vocational expert specifically testified that

16  housekeepers no longer work with partners: "They don't team them up too much

17  anymore. But it's pretty independent" (*see* Tr. 649). The Court finds that when this

18  information is combined with the new evidence, it suggests strongly that plaintiff is not

19  capable of performing her past relevant work as a housekeeper.

20      The ALJ also gave Dr. Quinci's opinions limited weight based on his finding that

21  plaintiff had made substantial improvement in her social functioning (*see* Tr. 23). The

22  Court notes that all of the limitations assessed by Dr. Quinci were not limited to her

23  social functioning.  Thus, this reason by the ALJ is insufficient to discount all of Dr.

24

1    Quinci's opinions. Additionally, the ALJ concluded that she had improved her social

2    functioning because she participated in more activities of daily living, specifically,

3    plaintiff's attending and participating in group therapy and attending classes at Lower

4    Columbia College (*see id.*). Based on a review of the relevant record, the Court concludes

5    that plaintiff's participation in group therapy and attending community college classes

6    does not demonstrate her adequate social functioning skills.  In fact, one of the records

7    referred to by the ALJ suggests that plaintiff was not experiencing improvement, but in

8    fact, was getting worse (*see* Tr. 345, *i.e.*, Exhibit 11F/5). On November 11, 2008 the

9    referenced progress report indicates the following:

10

11           [Plaintiff] has recently returned to taking classes at Lower Columbia
             College. She gets excessively nervous when she has to do any speaking
12           in front of the class. Both with her stage fright and with new social
             situations, she finds herself panicky, having palpitations, shortness of
13           breath, tremulousness and feeling on edge.

14   (Tr. 345).  Plaintiff's progress report notes that although she had a long standing issue

15   with anxiety, it had "gradually gotten worse over time" (*see id.*).

16           The Court finds that the ALJ's reliance on the quoted progress report as support

17   for his inference that plaintiff had "made substantial improvements in her social

18   functioning" is not a finding based on substantial evidence in the record as a whole (*see*

19   Tr. 23). For the reasons stated and based on the relevant record, the Court also concludes

20   that plaintiff's participation in group therapy and her attendance at community college

21   classes does not provide specific and legitimate reasons for the ALJ's failure to credit Dr.

22   Quinci's or Dr. Schneider's specific opinions regarding plaintiff's ability to function in a

23   work setting.

24

Based on the reasons stated, the Court concludes that the ALJ failed to evaluate properly the medical evidence provided by Drs. Schneider and Quinci.

Defendant contends that the ALJ properly relied on the opinion of examining doctor, Dr. Meharg, as well as the opinion of state agency medical consultants, and therefore the ALJ's decision is supported by substantial evidence in the record as a whole.

Each of these doctors, and her other examining doctors, all agreed that plaintiff's pace was slow and the ALJ failed to account for these opinions in evaluating plaintiff's RFC. The ALJ failed to credit fully Dr. Meharg's opinion that plaintiff's "cognitive processing speed is indeed very slow" (*see* Tr. 306).

The ALJ also failed to credit fully the November 4, 2008 opinions from state agency medical consultants, who also opined that plaintiff suffered from limitations with respect to pace (*see* Tr. 24 (citing Exhibit 9F/15, *i.e.*, Tr. 322)). Dr. Arthur L. Lewy, Ph.D. indicated his opinion that plaintiff's "processing speed is low" (*see* Tr. 322). Dr. Bruce Eather, Ph.D. affirmed this November 4, 2008 opinion from Dr. Lewy on March 23, 2009 (*see* Tr. 365).

Furthermore, the ALJ failed to credit fully the opinion of Dr. Schneider, who noted in January, 2007 that plaintiff was "slow to understand simple and detailed instructions, slow to perform tasks and slow to understand the expectations of a job" (Tr. 449). Although Dr. Schneider concluded that plaintiff could get along with others, he also indicated that she was "very slow and can be expected to always be behind" (*id.*).

Finally, Dr. Quinci also found plaintiff's pace to be slow (*see* Tr. 207, 296). In September, 2008, Dr. Qunici examined and evaluated plaintiff; and indicated that plaintiff was "unable to work at a competitive pace" (*see* Tr. 296). In June, 2007, Dr. Quinci again examined and evaluated plaintiff; and similarly concluded that plaintiff was "slow at problem solving skills" (*see* Tr. 207).

Plaintiff's slow pace is not accounted for in the ALJ's conclusion regarding plaintiff's RFC.  In fact, he does not even mention it (*see* Tr. 25 -26).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

Here, it appears from a review of the record that examining doctors, Drs. Schneider, Quinci and Meharg, all opined that plaintiff had limitations with respect to pace. However, although the ALJ found that plaintiff had "slow cognitive processing

speed and slow pace" (Tr. 20) when he made his step three determination regarding

whether or not plaintiff satisfied the "paragraph B" criteria of the Listing 12.02 or 12.06,

the ALJ failed to assess any limitations regarding pace or processing speed when he made

his subsequent determination regarding plaintiff's RFC (Tr. 20, 21). As indicated by the

ALJ in his written decision, the "limitations identified in the 'paragraph B' criteria are

not a residual functional capacity assessment but are used to rate the severity of mental

impairments at steps 2 and 3 of the sequential evaluation process" (*see* Tr. 21). Also as

explained by the ALJ, the "mental residual functional capacity assessment used at steps 4

and 5 of the sequential evaluation process requires a more detailed assessment by

itemizing various functions contained in the broad categories found in paragraph B of the

adults mental disorders listing in 12.00 of the Listing of Impairments" (Tr. 21 (*citing* SSR

96-8p)).

　　　　Despite the ALJ's apparent understanding of the differences, and despite finding

that plaintiff had slow cognitive processing speed and slow pace at steps 2 and 3, the ALJ

failed to provide a "a more detailed assessment by itemizing various functions contained

in the broad categories found in paragraph B," during subsequent steps, and instead

simply eliminated any restrictions regarding cognitive processing speed or pace when he

determined plaintiff's RFC.

　　　　For the stated reasons and based on the relevant record, the Court concludes that

the ALJ failed to explain adequately why he assessed no limitations on plaintiff's RFC

with respect to pace, despite the fact that every one of plaintiff's examining doctors

opined that this was an issue for plaintiff.  The hearing testimony also demonstrates that

the ALJ considered no limitation regarding pace when he presented his hypothetical to the vocational expert (*see* Tr. 647-50).

Therefore, plaintiff's limitations with respect to pace and processing speed should be evaluated explicitly when plaintiff's RFC is determined following remand of this matter.

Finally, the Court notes that to support the ALJ's decision, defendant cites part of the record not cited, nor relied on, nor given any weight by the ALJ (*see* Response, ECF No. 13, p. 6 (*citing* Tr. 368, *i.e.*, Exhibit 14F)); however, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)); *see also Molina*, *supra*, 674 F.3d at 1121,  2012 U.S. App. LEXIS 6570 at *42; *Stout*, *supra*, 454 F.3d 1050 at 1054 ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

## 2.  **The ALJ failed to evaluate plaintiff's credibility and testimony properly**.

At the outset, the Court notes that a determination of a claimant's credibility relies in part on the assessment of the medical evidence, *see* 20 C.F.R. § 404.1529(c), and the Court already has concluded that the ALJ failed to evaluate properly the medical evidence properly, *see supra*, section 1. Therefore, this failure by the ALJ also calls into

question the ALJ's conclusions regarding plaintiff's credibility, which will have to be reevaluated on remand.

There are several other things in this record that the ALJ may wish to reconsider when reevaluating plaintiff's credibility.  For instance, the ALJ relied heavily on plaintiff's activities of daily living in order to support his adverse credibility finding. Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  . . . .  does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603).

Here, the ALJ relied on plaintiff's ability to attend "both individual and group counseling, take classes at Lower Columbia College, and babysit" (*see* Tr. 25 (*citing* Exhibit 10F; 16F; 17F)). However, the ALJ did not indicate that these activities were transferable to a work setting and the ALJ did not explain how these few activities contradicted plaintiff's other allegations or testimony. As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.

*Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  The ALJ failed to do so here.

The Court also notes that the ALJ relied in part on plaintiff's efforts to obtain a job, and her indication that "she wouldn't mind having a job if she didn't have to be around other people," in order to find that plaintiff's impairments and "symptoms are not so severe to be disabling" (*see* Tr. 25). Although perhaps in some circumstances a claimant's self evaluation is helpful in determining her employability, here, in the context of this plaintiff's particular record, the Court does not find this to be a convincing reason for finding that plaintiff would be able to find a job suitable for her abilities.  Dr. Schneider was aware of plaintiff's attempts to get a job, yet he nevertheless opined that "the current data indicate that within reasonable medical probability, she will have extreme difficulty adapting to and maintaining gainful employment" (Tr. 435, 437). The Court notes that during his mental status examination, supporting this opinion, Dr. Schneider observed that plaintiff "was very slow to perform all tasks and it was necessary to tell her exactly what to do: she seemed to be incapable of making even the most simple inferences" (*see* Tr. 436).

An ALJ must explain why his opinions are more correct than those of the doctors. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22). Here, the ALJ's reliance on plaintiff's desire to work as a basis for rejecting Dr. Schneider's opinion is not supported by substantial evidence in the record. The Court finds that the ALJ did not explain adequately his reliance on an inference contrary to the explicit opinion of Dr. Schneider (*see* Tr. 25, 437).

1   Although Dr. Schneider may have had more information than did the ALJ at the

2   hearing, this information that now is in the record, and was in the record before the

3   Appeals Council, demonstrates that the ALJ's written decision is not based on substantial

4   evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750; *see also*

5   *Brewes*, *supra*, 682 F.3d at 1159-60 (emphasis added); s*ee also Shalala*, *supra*, 509 U.S.

6   at 297 n.2.

7      For the reasons discussed, and based on the relevant record, the Court concludes

8   that plaintiff's testimony and credibility should be evaluated anew following remand of

9   this matter.  In light of these findings, the entire five step evaluation process should be

10  completed anew.

12      3.  **This matter shall be reversed and remanded for further administrative**

13          **proceedings as opposed to an award of benefits**.

14      Generally, when the Social Security Administration does not determine a

15  claimant's application properly, "'the proper course, except in rare circumstances, is to

16  remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*,

17  379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put

18  forth a "test for determining when [improperly rejected] evidence should be credited and

19  an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

20  2000). It is appropriate when:

22          (1) the ALJ has failed to provide legally sufficient reasons for
            rejecting such evidence, (2) there are no outstanding issues that
            must be resolved before a determination of disability can be
23          made, and (3) it is clear from the record that the ALJ would be

1    required to find the claimant disabled were such evidence
2    credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater,* 80 F.3d 1273, 1292 (9th
Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra,* 80 F.3d at 1292.

Furthermore, the decision whether to remand a case for additional evidence or simply to

award benefits is within the discretion of the court. *Swenson v. Sullivan,* 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS,* 859 F.2d 1396, 1399 (9th Cir.

1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998);

*Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and

questions of credibility lies with the ALJ. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting Waters v. Gardner,* 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing

Calhoun v. Bailar,* 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to

consider properly all of the medical evidence as a whole and to incorporate the properly

considered medical evidence into the consideration of plaintiff's credibility and residual

functional capacity. *See Sample, supra,* 694 F.2d at 642.  Remanding the matter will

allow the Commissioner the opportunity not only to reconsider its decisions in the

sequential disability evaluation, but also to consider fully the evidence plaintiff submitted to the Appeals Council.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 7th day of December, 2012.

J. Richard Creatura
United States Magistrate Judge